**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | | |
|---|---|---|
| WHITNEY T. TYUS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No. 1:24-cv-1005-STA-jay** |
| | ) | |
| PORTFOLIO RECOVERY | ) | |
| ASSOCIATES, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

On March 27, 2025, the United States Magistrate Judge issued a report and recommendation (ECF No. 45), recommending that the Court grant Defendant Portfolio Recovery Associates, LLC's Motion for Summary Judgment (ECF No. 28). Plaintiff has filed objections to the report and recommendation, and Defendant has responded to Plaintiff's objections. For the reasons set forth below, the Court **ADOPTS** the report and recommendation and **GRANTS** Defendant's Motion for Summary Judgment.

## BACKGROUND

**I.    Procedural History**

Plaintiff initiated this case by filing a Pro Se Complaint (ECF No. 1) on January 4, 2024. The Pro Se Complaint would hold Defendant liable for two separate violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and for the tort of invasion of privacy. After Plaintiff served Defendant with summons and a copy of her Pro Se Complaint, Defendant filed a dispositive motion presented as a motion to dismiss or in the alternative a motion for summary judgment (ECF

1

No. 8).  Plaintiff responded in opposition to the motion.  As part of her briefing on the motion, Plaintiff raised evidentiary objections to the evidence submitted by Defendant. The Magistrate Judge determined that Plaintiff had not properly responded to Defendant's factual contentions, a briefing requirement under Federal Rule of Civil Procedure 56 and Local Rule 56.1. In order to give Plaintiff a full opportunity to be heard on the evidence, the Magistrate Judge denied Defendant's motion without prejudice and instructed Defendant to re-file the motion as a Rule 56 motion for summary judgment.  Order Denying Def.'s Mot. to Dismiss, July 31, 2024 (ECF No. 8).[1] Plaintiff appealed that ruling, and the Court affirmed the Magistrate Judge. Order Affirming Mag. J.'s Order, Aug. 20, 2024 (ECF No. 24).

On August 28, 2024, Defendant filed its Answer (ECF No. 27) as well as its renewed Motion for Summary Judgment.  The Magistrate Judge subsequently held a scheduling conference with the parties and adopted their proposed case management plan in a Scheduling Order (ECF No. 36) entered on October 25, 2024.  A jury trial is currently set for November 17, 2025.

## II.    Defendant's Motion for Summary Judgment

Plaintiff alleges that Defendant improperly accessed Plaintiff's consumer reports on several dates in 2022 and 2023 and did so without any permissible purpose defined under the FCRA.  Defendant seeks judgment as a matter of law on its defense that it accessed the reports as part of its efforts to collect a debt from Plaintiff.  The Magistrate Judge has summarized the parties' arguments from the briefing on the Motion for Summary Judgment.  Plaintiff has not actually objected to that part of the report. Without any specific objection, the Court hereby adopts the Magistrate Judge's summary of the arguments as follows.  Defendant makes three arguments in

---

[1] The Magistrate Judge also denied Defendant's motion for permission to file a CD of telephone call recordings (ECF No. 9) and Plaintiff's motion to strike the declaration of Meryl Dreano (ECF No. 18).

support of its request for judgment as a matter of law.  First, while denying that it ever requested Plaintiff's credit report from a credit reporting agency on the occasions listed in the Pro Se Complaint, Defendant contends that it was attempting to collect a debt from Plaintiff and therefore had a "permissible purpose" under the FCRA for obtaining information about her. Second, Defendant submits that it did not receive any "consumer credit report" information concerning Plaintiff but only "account review inquiry" results that the FCRA permits it to obtain. Finally, Defendant maintains that Plaintiff cannot prevail on an invasion of privacy claim as a matter of law because obtaining credit information pursuant to a "permissible purpose" is not an unreasonable intrusion upon one's privacy.

Plaintiff filed a response in opposition (ECF No. 38) to the Motion for Summary Judgment along with a series of her own exhibits.  Plaintiff argues that the Court should deny Defendant's Motion because Defendant has failed to adequately prove that it owns the rights to any debt owed by Plaintiff.  Plaintiff further argues that whatever type of inquiry Defendant made concerning her credit, Defendant did not make the inquiry for a "permissible purpose."  Triable issues of fact remain then over Defendant's alleged violations of the FCRA. Plaintiff also contends that Defendant acted unreasonably when it accessed her personal information, which therefore supports her claim for an invasion of her privacy.

## A.  Defendant's Statement of Undisputed Material Facts

As part of his recommendation on the issues raised in the parties' briefing on the Motion for Summary Judgment, the Magistrate Judge first considered whether any material fact was actually in dispute.  In support of its Rule 56 Motion, Defendant prepared a statement of undisputed material facts (ECF No. 28-6), to which Plaintiff has responded.  Plaintiff also filed her own statement of additional facts (ECF No. 38-12).  The Magistrate Judge has proposed that the Court

find the following material facts undisputed for purposes of deciding Defendant's Motion for Summary Judgment. Having reviewed the Magistrate Judge's report and considered the statements of fact submitted by the parties, the Court hereby adopts that portion of the report.

In July 2011, Defendant purchased from Capital One a portfolio of defaulted and charged-off credit card accounts. Def.'s Statement of Undisputed Fact ¶ 1 (ECF No. 28-6). One of the accounts Defendant purchased was an account that Capital One issued to Plaintiff in 2007. *Id.* ¶ 4. The Capital One account holder information for the account purchased by Defendant from Capital One matched Plaintiff's full name, the address where she lived when the account was charged off, the last 4 digits of her social security number, her year of birth, the date the account was opened and charged off, the past due account balance at charge off in the amount of $799.74, along with the total past due account balance, including post-charge off interest, of $1,035. *Id.* ¶ 6.

Over the next 13 years, Defendant made efforts to collect the account from Plaintiff. *Id.* ¶ 7. Defendant addressed numerous letters to Plaintiff between 2011 and 2023, explaining that Defendant had bought Plaintiff's account from Capital One and that Defendant was a creditor seeking to collect a debt. *Id.* Plaintiff has lived at her current address for the last eleven years and denies ever receiving any letters from Defendant about the debt.

Defendant also made recorded phone calls to Plaintiff, the recordings of which Defendant has made part of the record. *Id.* ¶ 8. The report and recommendation describes the contents of the recorded calls as follows. During the first phone call, which occurred on November 22, 2011, an unidentified collector presumably from Defendant's collection department called and asked to speak with "Whitney Tyus." The person who answered the call responded, "This is she." Defendant's collector then identified the Capital One account she was calling about, advised "Whitney Tyus" that the call was being recorded and was an attempt to collect a debt, and

4

explained that information obtained in the call would be used for the purpose of collecting the debt. The collector then stated that the account had a past due balance of $1,035 and asked the person who identified herself as Whitney Tyus whether she could pay off the account. The person identifying as Tyus said that she could not pay off the account at that time. The collector then asked if the person still resided at the same address she was residing at when Capital One charged off the account, and the person identifying herself as Tyus stated "yes." The person identifying herself as Tyus commented that she "got the card when [she] was 18" and did not pay because she "was 18 and wasn't thinking about making payments on the account." "Whitney Tyus" then ended the call.

On April 3, 2012, Defendant again called Plaintiff. Another unidentified collector asked to speak to "Whitney," and the person who answered the call responded, "This is she." The collector advised that the call was being monitored and recorded, that the call was an attempt to collect a debt, and that any information obtained during the call would be used to collect the debt. During the call the person who identified herself as "Whitney" stated that she was not able to make any payments on the Capital One account. "Whitney" again stated she "got the card when she was 18" and then hung up when she was asked to confirm her address.

On March 12, 2013, an unidentified collector called for a third time. Upon the call being answered, the representative said, "Hi, hello, is this Whitney?" The recipient of the call responded, "Yes." During this third call, "Whitney" asked how much it would cost to pay off the entire debt on her debit card. The collector offered to settle the $1,035 debt for $724. "Whitney" then asked if she could make payments on the discounted amount. The collector offered to accept 6 payments of $122, at which point "Whitney" hung up.

During the three phone calls the person who answered the calls and identified herself as

"Whitney Tyus" or "Whitney" never denied the account was hers.[2]  No payments on the account have ever been made to either Capital One or Defendant. *Id.* ¶ 12.

On December 14, 2023, Plaintiff reviewed her consumer reports from TransUnion and Experian and identified multiple inquiries made by Defendant. Pl.'s Statement of Add'l Fact ¶ 1 (ECF No. 38-12).  Plaintiff claims that she did not provide Defendant with any written or verbal consent to access her consumer reports or to conduct inquiries on her file with any consumer reporting agency.  *Id.* ¶ 8.  Defendant admits that it received several "account review inquiries" from Experian and TransUnion related to Plaintiff in 2022 and 2023 but denies that it received or obtained her consumer report during that period. Def.'s Statement of Undisputed Fact ¶ 25.

Defendant procures "account review inquiries" from consumer reporting agencies like TransUnion and Experian. *Id.* ¶ 13.[3] Defendant does not actively request an account review inquiry

---

[2] The Magistrate Judge noted that Plaintiff disputes this fact. While never denying that she spoke with Defendant's representatives during the three recorded phone calls, Plaintiff questions the authenticity of the recorded phone calls and states that she has no recollection of the phone calls. She further attempts to cast doubt on the authenticity of recorded phone calls by pointing out that there is no additional identifying information in the phone calls to conclusively establish that the person identified as "Whitney Tyus" in the phone call is actually her. The Magistrate Judge found that Plaintiff failed to offer any evidence to substantiate her dispute other than her self-serving statements.

Plaintiff objects to the Magistrate Judge's description of her affidavit as "self-serving." Where "the evidence consists of one party's affidavit against another's, there is no rule of procedure that allows federal courts to disregard the plaintiff's testimony simply because it is self-serving." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022) (citing *Pierce v. Rowland*, 2021 WL 3929549, at **4-5 (6th Cir. Sept. 2, 2021)).  But this not actually the case here.  Plaintiff's affidavit does not address the calls from 2011 to 2013.  Instead, Plaintiff denies that she received any calls in 2022 or 2023 during the time in which Defendant's account review inquiries popped up with the credit reporting services.  Because Plaintiff does not specifically deny that she received calls from Defendant in 2011, 2012, or 2013, the Magistrate Judge correctly found that Plaintiff had not created a genuine dispute of fact over this point.

[3] By way of background, Defendant purchases data from vendors such as Experian and TransUnion and applies the data to a proprietary scoring formula to arrive at a score. Def.'s Statement of Undisputed Fact ¶ 14.  Defendant's strategy and analytics department uses the in-house calculation to determine collection strategy on each account. *Id.*  Defendant adds that while

at a specific time. *Id*.  Rather the consumer reporting agencies automatically generate an account review inquiry any time they receive updated information on a particular consumer.  For example, when TransUnion obtains updated location information—like a new address or telephone number—on a consumer for whom Defendant has an account, TransUnion or Experian will automatically send that updated information to Defendant. *Id*. ¶ 15.  Likewise, if TransUnion or Experian receives information regarding a change in a consumer's recovery score or credit account limits, the consumer reporting agency will automatically send that information to Defendant. *Id*.

Account review inquiries only involve the consumer reporting agency sending Defendant newly updated information like a new address. *Id*. ¶ 16.  As part of the account review inquiry, Defendant does not access or receive a consumer report. *Id*. An account review inquiry is known in the credit reporting industry as a "soft pull" because it is only visible on credit reports requested by the consumer but is not visible to creditors or third parties.  *Id*. ¶ 17. According to the Consumer Financial Protection Bureau ("CFPB"), account review inquiries do not impact a consumer's FICO credit score. *Id*.

If Defendant had obtained Plaintiff's consumer report, a "hard inquiry" would appear in Plaintiff's "personal consumer report" in the section entitled "information shared with others."  *Id*. ¶ 21. On the other hand, "soft pulls" like an account review inquiry are located in the "inquiry section" of a consumer's personal credit report. *Id*. ¶ 23. Plaintiff submits no evidence to suggest that Defendant obtained her consumer report or made a "hard inquiry."  *Id*. ¶ 24.  A "hard inquiry" would also appear in Defendant's account records for Plaintiff's account. *Id*. ¶ 18.  Defendant's account records for Plaintiff's account do not show that Defendant has made any attempt to obtain

---

the scores impact collection strategy, the scores themselves and the underlying data used to create the scores are not available to Defendant's collections department, including individual collectors. *Id*.

Plaintiff's complete credit report in the last 9 years.  *Id.* ¶ 19.

**B. Plaintiff's Evidentiary Objections**

Defendant's statement of undisputed facts primarily relies for support on the declaration of Meryl Dreano (ECF No. 28-1). According to Dreano's declaration, she is an authorized representative and custodian of records for Defendant.  Dreano Decl. ¶¶ 2-3. As a custodian of records, Dreano has "access to [Defendant]'s account files and notes for consumer accounts that [Defendant] owns and attempts to collect . . . [and] certain of [Defendant]'s recorded telephone conversations with consumers." *Id.* ¶ 3. Dreano states that she has personally reviewed Defendant's files regarding Plaintiff's account. *Id.* at ¶ 4.  According to Dreano, Defendant purchased a portfolio of defaulted and charged off credit card debt from Capital One that included a debt related to Plaintiff. *Id.* ¶ 5. A Bill of Sale related to Defendant's portfolio purchase and an internal account information document Defendant refers to as "Load Data" are attached as exhibits to Dreano's declaration. *Id.* Dreano states that the Bill of Sale and Load Data are records that are "maintained . . . in the ordinary course of [Defendant's] business, and it is PRA's regular practice to purchase, accept and maintain records from original creditors like Capital One." *Id.* ¶ 6.

The declaration goes on to describe its other exhibits in a similar way.  Dreano's declaration references and incorporates three exhibits in all: the redacted Bill of Sale and Load Data sheet in which Capital One Bank (USA) National Association sold and transferred accounts to Defendant (ECF No. 28-2); nineteen letters that Defendant mailed to Plaintiff at various addresses between 2011 and 2023 (ECF No. 28-3); and a compact disc containing recorded phone calls between Defendant's representatives and a party whom Defendant contends is Plaintiff (ECF No. 28-4).[4]

---

[4] Defendant has also submitted a "Consumer Education Blog" published by the CFPB (ECF No. 28-5).

Plaintiff raised in her summary judgment brief evidentiary objections to the exhibits attached to the Dreano declaration and now makes identical arguments as part of her objections to the Magistrate Judge's report and recommendation. In responding to the Motion for Summary Judgment, Plaintiff objected to the admissibility of the Bill of Sale and Load Data sheet on the grounds that the documents are inadmissible hearsay and lack authentication, and the redaction of information on the documents violates the "best evidence" rule. As for Defendant's collection letters, Plaintiff argued that without some confirmation like a delivery log to show that Plaintiff actually received the letters, the letters were hearsay and lacked authentication. Finally, Plaintiff argued that the recorded phone calls lacked authentication to prove she was the party to the call and otherwise that the calls did not constitute hearsay.

The Magistrate Judge overruled each of Plaintiff's objections as part of his report and recommendation. The Magistrate Judge reasoned that the Bill of Sale and Load Data sheet were admissible as business records under Federal Rule of Evidence 803(6). Nor did the redaction of certain terms in the Bill of Sale violate the best evidence rule under Federal Rule of Evidence 1002. The Magistrate Judge also concluded that the Dreano declaration properly authenticated Defendant's written correspondence addressed to Plaintiff and the recorded phone calls under the business records exception.

As part of her objections to the report and recommendation, Plaintiff repeats each of her arguments about the inadmissibility of the exhibits attached to the Dreano declaration. Other than restating her earlier objections, Plaintiff has not specifically objected to an error in the Magistrate Judge's conclusion about the admissibility of the exhibits or cited any legal authority to call his recommended evidentiary rulings. "A general objection, *or one that merely restates the arguments previously presented*, does not sufficiently identify alleged errors on the part of the magistrate

judge." *E.E.O.C. v. Dolgencorp, LLC*, 277 F.Supp.3d 932, 965 (E.D. Tenn. 2017) (emphasis added) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). "An objection that does nothing more than disagree with a magistrate judge's findings, without explaining the source of the error, is not considered a valid objection." *Id.* (cleaned up).

Here, Plaintiff's objections are actually just a repetition of the arguments she raised in her summary judgment briefing. The Sixth Circuit has held that when a party objects to a Magistrate Judge's recommendation to grant a Rule 56 motion, the party cannot preserve a specific objection by simply repeating all of the same arguments it made in opposing the Rule 56 motion. *Howard*, 932 F.2d at 508 (holding that plaintiff's objections could not simply rely "on the Brief in support of its Motion for Summary Judgment"). The Court of Appeals opined that objections to a Magistrate Judge's order or recommendation must be specific "in order to focus the busy district court's attention on only those issues that were dispositive and contentious" and thereby serve judicial efficiency. *Id.* at 509.

The Court need not review any recommendation to which no specific objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Plaintiff has not shown how the Magistrate Judge failed to consider one of her arguments or misapplied the law in reaching in his proposed conclusion of law on the admissibility of the exhibits. In the absence of more specific and focused objections, the Court declines to give Plaintiff another bite at the apple. At the end of the day, Defendant has shown through the Dreano declaration that Dreano is a custodian of Defendant's records and that each of the exhibits attached to the declaration qualifies as a "business record" under the business record exception. *United States v. Johnson*, 79 F.4th 684, 705 (6th Cir. 2023) (citing Fed. R. Evid. 803(6)(D)'s requirement that a proponent law foundation by showing "all the[ ] conditions" under Rule 803(6) "by the testimony of the custodian or another qualified witness, or by a certification").

The Court concludes that the exhibits are admissible under the business records exception to the rule against hearsay.

The Court would add that Plaintiff contests the admissibility of the recorded calls for another reason, arguing that Defendant has not shown through the Dreano declaration that Plaintiff was actually the person on the call. Dreano attests to a number of facts about the calls: (1) that on each occasion a collector called a phone number ending in 0545; (2) according to publicly available information the number ending in 0545 was associated with Whitney Tyus; (3) in each instance the collector asked to speak with "Whitney Tyus" and the person answering the call responded that a person by that name was speaking; and (4) the speaker identifying as Whitney Tyus on each call never denied owing the account.

What Dreano did not do was specifically opine that the voice heard on the call was Plaintiff's. After all, Defendant has cited the calls to show that it purchased a debt owed by Whitney Tyus and that it made the calls to a phone number associated with the person who owed the debt. Defendant can also show that some of the personal identifying information on the account like name, address, and phone number matched Plaintiff's. A reasonable juror could find from the calls and other circumstantial evidence that the person who identified as "Whitney Tyus" or "Whitney" on the calls was Plaintiff. And Plaintiff's claim is not that Defendant violated the law by placing the calls. Plaintiff alleges that Defendant's account review inquiries, or "soft pulls," without her permission or some valid purpose violated Plaintiff's rights under the Fair Credit Reporting Act. The calls are only relevant to show that Defendant had made attempts to collect the debt, not to the ultimate question of whether Defendant's other collection practices may have violated federal law. Plaintiff's objections to the evidence are overruled.

### C. Plaintiff's Rule 56(d) Request for Discovery

As part of her objections to the report and recommendation, Plaintiff argues that she is entitled to discovery on her claims before the Court considers Defendant's Motion for Summary Judgment. Objs. to Rep. & Recommendation 5 ("No discovery has taken place in this matter. Plaintiff has been denied the opportunity to examine [Defendant]'s internal procedures, witness testimony, or the systems used to generate the Load data and CD recordings."). Federal Rule of Civil Procedure 56(b) allows a party to a civil action to file a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Even so, "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Mattingly v. R.J. Corman Railroad Grp., LLC*, 90 F.4th 478, 492 (6th Cir. 2024) (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) and *Anderson*, 477 U.S. at 257).

"A nonmovant generally opposes motions for summary judgment as premature for lack of sufficient discovery through Federal Rule of Civil Procedure 56(d)." *McCausland v. Charter Twp. of Canton*, 23-1479, 2024 WL 3045525, at *7, n.7 (6th Cir. June 18, 2024). Rule 56(d) allows the "nonmovant [to] show[ ] by affidavit . . . that, for specified reasons, it cannot present facts essential to justify its opposition," and upon such showing, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(d)).

Although she cites the rule, Plaintiff has not followed the correct procedure for seeking relief under Rule 56(d). After Defendant filed its Rule 56 Motion in August 2024, Plaintiff filed a motion for an extension of time to respond (ECF No. 33). Notably, Plaintiff's motion for the extension never cited the need for discovery. The Magistrate Judge granted Plaintiff's request at the scheduling conference on October 25, 2024. When she did file her response in opposition,

Plaintiff made vague references to the lack of opportunity for discovery but without invoking Rule 56(d) or stating clearly what she hoped to discover or how the information would allow her to respond to the Motion for Summary Judgment. Plaintiff did present a 12-page affidavit as part of her response to the Motion for Summary Judgment. However, Plaintiff never states in her affidavit that she needed additional discovery in order to respond fully and completely to Defendant's Rule 56 Motion. Because Plaintiff did not comply with the requirements of Rule 56(d), she has not shown why the Court should defer ruling on the Motion and grant her more time for discovery.

Moreover, Plaintiff has not shown that any of the information she describes in her objections to the report and recommendation would be relevant. "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *Doe*, 928 F.3d at 490 (citations omitted). In her briefing, Plaintiff mentions the "opportunity to examine [Defendant]'s internal procedures, witness testimony, or the systems used to generate the Load data and CD recordings." But Plaintiff does not explain how any of this "procedural" evidence is relevant to whether Defendant accessed her consumer credit information without a valid purpose.

Even if she could show how the information is relevant, Plaintiff has not shown why she could not have obtained the discovery sooner. Once the parties had framed a plan for discovery and the Magistrate Judge had adopted their proposed case management plan in October 2024, the discovery period opened and has remained open at all times while Defendant's Motion was pending. In fact, the deadline to complete discovery will not expire until June 27, 2025. As far as the Court can tell, Plaintiff has not propounded any written discovery requests on Defendant, requested to depose any witnesses, or used any of the other discovery tools at her disposal. Under the circumstances, Plaintiff has not shown why she needs more discovery before the Court reaches

the merits of Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869-70 (1989)); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). The United States District Court for the Western District of Tennessee adopted Administrative Order 2013-05 for this very purpose, referring all cases filed by non-prisoner plaintiffs to a United States Magistrate Judge for the management of all pretrial matters. The Magistrate Judge has recommended that the Court grant Defendant's Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna*, 934 F.3d at 515 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require

14

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Plaintiff has filed timely objections to the Magistrate Judge's report and recommendation. While "a district judge must determine de novo any part of a Magistrate Judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C), the district court is not required to review (under a de novo or any other standard) "any issue that is not the subject of an objection." *Arn*, 474 U.S. at 150. The district court should adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed. *Id.* at 151.

## ANALYSIS

The Magistrate Judge has recommended that the Court grant Defendant's Motion for Summary Judgment on both of Plaintiff's claims. According to the report and recommendation, Plaintiff's claims under the Fair Credit Reporting Act fail because Defendant had a permissible purpose to receive account inquiries as the owner of Plaintiff's charged off Capital One account. Plaintiff's invasion of privacy claim fails because obtaining a credit report for a permissible purpose under the Fair Credit Reporting Act is not, as a matter of law, an intrusion upon privacy. The Court will consider the Magistrate Judge's recommendations as to each claim separately.

### I.    Liability Under the FCRA

"The Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681, is designed to accomplish dual goals: to promote efficiency in the Nation's banking system and to protect consumer privacy." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001) (internal quotation marks omitted)). As part of its regulatory framework,

the FCRA recognizes permissible uses of "consumer reports," "which summarize credit history and credit worthiness." *Id.* (citing 15 U.S.C. § 1681b). "A person violates the Fair Credit Reporting Act by obtaining a consumer credit report for an unauthorized purpose." *Merritt v. Experian*, 560 F. App'x 525, 528 (6th Cir. 2014) (citing 15 U.S.C. § 1681b(f)(1)).

The statute permits "any consumer reporting agency" to "furnish a consumer report" only for specifically defined, permissible uses "and no other." 15 U.S.C. § 1681b(a). One of the permitted purposes is the disclosure of a report "[t]o a person which [the consumer reporting agency] has reason to believe intends to use the information in connection with . . . a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . review or collection of an account of the consumer." 15 U.S.C. § 1681b(a)(3)(A). In order to prove that someone gained access to a consumer credit report for an unauthorized purpose, a plaintiff must make the following showings: (1) there was a consumer report; (2) the defendant used or obtained that report; and (3) the defendant did so without a permissible purpose. *Bickley*, 751 F.3d at 728.

The Magistrate Judge has recommended granting the Motion for Summary Judgment on Plaintiff's FCRA claims "because a user is free from civil liability so long as it accesses a consumer report with reason to believe that a permissible purpose exists." Mag. J. Rep. & Recommendation 13 (quoting *Riddle v. Portfolio Recovery Assocs., Inc.*, No. CIV.A. 12-82-DLBJGW, 2014 WL 1252610, at *3 (E.D. Ky. Mar. 26, 2014). The Magistrate Judge found that Plaintiff's case was factually indistinguishable from *Riddle v. Portfolio Recovery Associates*. In *Riddle*, Porfolio Recovery Associates ("PRA"), the same defendant as in the case at bar, purchased a plaintiff's charged off debt and received multiple account information updates from consumer reporting agency TransUnion whenever the plaintiff's account information, i.e. address, telephone numbers,

credit limit, changed. *Riddle*, 2014 WL 1252610, at **1-2. When the plaintiff reviewed his TransUnion credit report, he noticed multiple account reviews by PRA. *Id.* at *2. The plaintiff sued PRA alleging a violation of the FCRA and an invasion of privacy. *Id.*  The Eastern District of Kentucky granted PRA summary judgment on the ground that PRA had a "permissible purpose" for its inquiries under the FCRA. *Id.* at *3.  The *Riddle* court explained its reasoning as follows:

> PRA, LLC correctly claims it was permitted by 15 U.S.C. § 1681b(a)(3)(A) to access Plaintiff's consumer report. That portion of the FCRA permits a user to obtain a consumer report if it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). PRA, LLC had reason to believe it held two of Plaintiff's accounts. After all, it owned two past-due and owing accounts in Plaintiff's name, date of birth, social security. Furthermore, PRA, LLC accessed Plaintiff's consumer report with the intended purpose of updating his location information, which is a form of account review. Thus, PRA, LLC did exactly what it was permitted to do by 15 U.S.C. § 1681b(a)(3)(A) when it accessed Plaintiff's consumer report.

*Id.* The Magistrate Judge recommended then that the Court follow *Riddle* and hold that Plaintiff has failed to create a genuine issue of material fact over her FCRA claim.

Based on a *de novo* review of the report and recommendation, the Court holds that Plaintiff cannot prove an essential element of her FCRA claims.  A defendant's "showing of a permissible purpose is a complete defense" to an alleged violation of the FCRA.  *Stonehart v. Rosenthal*, No. 01 Civ. 651(SAS), 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001) (citing *Adv. Conservation Sys. Inc. v. Long Island Lighting Co.*, 934 F. Supp. 53, 54 (E.D.N.Y. 1996)).  Whether a person has obtained credit information for a permissible purpose is a question of law suitable for decision at summary judgment. *Sheridan v. Convergent Outsourcing, Inc.*, No. 3:16-cv-00212, 2016 WL 3965102, at *3 (M.D. Tenn. July 25, 2016) (collecting cases); *Adv. Conservation*, 934 F. Supp. at 54; *Zeller v. Samia*, 758 F. Supp. 775, 781-82 (D. Mass. 1991).  Just as in *Riddle*, Defendant has shown that it purchased a charged off account in which the account holder's name and personal

17

identifying information (date of birth, former address, and social security number) all matched Plaintiff's.[5]  Defendant had written letters in its attempts to collect the debt since 2011.  There is also evidence Defendant's collectors placed calls to a phone number associated with "Whitney Tyus" and had three phone conversations with a person who identified herself as "Whitney Tyus" or "Whitney."  The person who answered Defendant's calls never denied having the Capital One account or owing a debt related to the account.  In fact, the statements on the calls suggest that "Whitney" admitted the validity of the debt.  This proof tends to show that Defendant had attempted to collect the debt from the accountholder whose personal information matched Plaintiff's and had reason to believe that the person with whom Defendant was communicating owed the debt.

Perhaps more important, Defendant has shown through the Dreano declaration that Defendant contracts with reporting agencies like Experian and TransUnion to provide periodic updates about a consumer's information, what the industry refers to as "an account review inquiry."  Dreano Decl. ¶ 21.  Dreano attests in her declaration that account review inquiries can appear on a consumer credit report as "soft pulls" with no impact on the consumer's credit score. *Id*. ¶ 28.  Contrary to the allegations of the Complaint, there is no evidence that Defendant conducted a "hard inquiry" and obtained a full disclosure of Plaintiff's credit report.  A reasonable juror could find from this evidence that Experian and TransUnion had "reason to believe" that

---

[5] As part of her objections to the report and recommendation, Plaintiff argues that *Riddle* is distinguishable.  In Plaintiff's reading of the case, *Riddle* did not involve a dispute over the account or the ownership of the debt.  Plaintiff's objection is inaccurate and beside the point.  The plaintiff in *Riddle* did, in fact, contest the validity of the debt.  *Riddle*, 2014 WL 1252610, at *1 ("Both accounts were in Plaintiff's name, date of birth and social security. Plaintiff alleges those accounts are not his.").

Defendant would use the information they furnished about Plaintiff for a permitted purpose under § 1681b(a)(3)(A), the collection of a debt.

As the party with the burden of proof, Plaintiff must now come forward with some evidence to contest Defendant's showing and prove that Defendant obtained her information without justification. Plaintiff essentially disputes that she ever had an account with Capital One. Plaintiff denies "any knowledge of the account, any agreement with Capital One or [Defendant], and any consent to access reports created about Plaintiff." Pl.'s Objs. to Rep. & Recommendation 13 (ECF No. 47). Assuming this is enough evidence to create a genuine dispute over whether Plaintiff was the Whitney Tyus who incurred the debt to Capital One, Plaintiff can only show that this is a case of mistaken identity.

Most courts to have considered the "mistaken identity" question have held that even when a user accesses credit information by mistake, there is no violation of the FCRA as long as there is reason to believe the use of the information is permissible. *Little v. Asset Acceptance, LLC*, No. 12-81116-CIV, 2013 WL 12080760, at *4 (S.D. Fla. Apr. 8, 2013) ("[T]here is no FCRA violation even where a defendant has made a good faith mistake in pulling a consumer report."); *Beckstrom v. Direct Merchant's Credit Card Bank*, No. Civ.04-1351 ADM/RLE, 2005 WL 1869107, at *3 (D. Minn. Aug. 5, 2005) ("Although it was later discovered that Plaintiff did not own the 6269 account, the FCRA is not violated if the entity seeking the credit report made a good faith error in pulling the report."); *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 42 (E.D.N.Y. 2005); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 820 (W.D. Ky. 2003); *Korotki v. Attorney Servs. Corp., Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA.").

19

The ultimate question for a jury, though, would not necessarily be whether Plaintiff had an agreement with Capital One or Defendant or had given her consent for either company to access her consumer credit report. *Shah v. Collecto, Inc.*, No. Civ.A.2004-4059, 2005 WL 2216242, at *12 (D. Md. Sept. 12, 2005) ("The fact that the debt was not owed in this case is . . . immaterial."); Rather, the question for the trier of fact is did Defendant obtain Plaintiff's consumer information without a lawful purpose?  Plaintiff may deny that she is the same "Whitney Tyus" who had been the accountholder of the charged off Capital One account or who had spoken to Defendant's collection department over a decade ago and admitted owing the debt.  But Defendant has shown there was *reason to believe* Plaintiff was the owner of the Capital One account because the account owner's personal information matched Plaintiff's.  Plaintiff has not produced any proof to contest these showings.

Plaintiff also objects that the CFPB has issued binding orders post-*Riddle*, prohibiting Defendant from claiming ownership or attempting to collect accounts "without verifying original account-level data first."  Pl.'s Objs. to Rep. & Recommendation 13-14.  Plaintiff has attached copies of CFPB orders issued in 2015 and 2023.  Plaintiff argues that the CFPB orders show the regulatory landscape has "evolved" in the decade since *Riddle* was decided.  *Id.* at 14.  The problem is Plaintiff did not raise these points about the CFPB orders or the changing legal framework in her original briefing on Defendant's Motion for Summary Judgment.  It is well established that a party forfeits any issue she did not actually present to a magistrate judge in the first instance and then raises the issue for the first time in objections to the magistrate judge's report and recommendation.  *AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019) (citation omitted); *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  Because Plaintiff has forfeited this argument, the Court declines to consider it now.  Therefore, the Court **ADOPTS**

the Magistrate Judge's recommendation and **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's FCRA claims.

## II.    Invasion of Privacy

The Magistrate Judge has likewise recommended that the Court grant Defendant judgment as a matter of law on Plaintiff's invasion of privacy claim.  Under Tennessee law, a plaintiff alleging invasion of privacy must prove the following elements: (1) that the information sought by the opposing party was not properly discoverable or was otherwise subject to some form of privilege; (2) that the opposing party knew that the information was not discoverable or was subject to privilege, but nevertheless proceeded to obtain that information; (3) that the obtaining of such information would be highly offensive to a reasonable person; and (4) that injury was suffered from the invasion of privacy.  *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 412 (Tenn. 2002).  The Magistrate Judge cited two different cases applying Michigan law for the proposition that "obtaining a credit report for a permissible purpose under the Fair Credit Reporting Act is not, as a matter of law, an intrusion upon privacy." Mag. J. Rep. & Recommendation 15 (citing *Geiling v. Wirt Fin. Servs.*, 2014 U.S. Dist. LEXIS 183237, *146-47 (E.D. Mich. 2014) and *Daniel v. Equable Ascent Fin., LLC*, 2014 U.S. Dist. LEXIS 150194, *2 (E.D. Mich. 2014)).

Because Plaintiff cannot prove that Defendant obtained her credit information for an impermissible purpose under the FCRA, it follows that she cannot make out the elements of her claim for invasion of privacy. Plaintiff cannot show that her credit information was "not properly discoverable" or that the use of her information "would be highly offensive to a reasonable person."  For reasons the Court has already explained, there is undisputed proof Experian and TransUnion had reason to believe Defendant was using Plaintiff's information to collect a debt.

Defendant had reason to believe that Plaintiff and the "Whitney Tyus" who had incurred the Capital One debt purchased by Defendant were the same person.   In the absence of FCRA protection for her information, Plaintiff has failed to allege the source of any other protection to safeguard her information from disclosure to Defendant.

Plaintiff argues in her objections to the report and recommendation that *Geiling* and *Daniel* are distinguishable because there was no dispute in those cases about the validity of the debt or the identity of the debtor.   But as the Court has already decided, a dispute over the validity of the debt or the identity of the debtor would not show that Defendant accessed Plaintiff's credit information without a permissible purpose, at least not when all of the personal information of the accountholder matches Plaintiff's.   So even assuming *Geiling* and *Daniel* did not involve these other disputed issues about the debt or the debtor, the fact remains that credit reporting agencies had reason to believe Defendant was using Plaintiff's information to collect a debt.

Based on its *de novo* review of the Magistrate Judge's report and recommendation and Plaintiff's timely objections, the Court **ADOPTS** the Magistrate Judge's report and recommendation and **GRANTS** Defendant's Motion for Summary Judgment.   The Clerk of Court is directed to enter judgment.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 21, 2025.